Thank you, Your Honor. May it please the Court, my name is Jill Otake and I represent the United States in this matter. I would like to reserve whatever time I have remaining. The two key questions for this appeal are, number one, did the questioning of Mr. Dorsey cease? And number two, did Mr. Dorsey re-initiate contact with law enforcement? Because the answer to both of those questions is yes, the government respectfully asks this Court to reverse Judge Lasnik's ruling suppressing Mr. Dorsey's statement. Ms. Otake, in light of the in-bank decision in the United States v. Hinkson, do we have to give any special deference to Judge Lasnik's factual determination that the questioning never ceased, that there was but a pause in the proceedings as the officers went to, I assume, call you and the deputy prosecutor at King County to try and figure out what to do? Ms. Otake I think, Your Honor, we still need to review the factual findings for clear error. And the government's position is that the Court clearly erred at E.R. 5, Lines 13-14, when the Court ruled that at no point then did the detective cease interrogating defendant. Under Judge Lasnik's interpretation, there is absolutely no legal import to several of the undisputed facts. First, that there was a clean break in the questioning. Second, that the agents left the room. Third, that the entirety of what the defense has characterized as the Miranda violation was only four minutes. The detectives were with Devon Dorsey for four minutes before they left the room. The problem I have with the record, and I did view the videotape of the interrogation, the problem I have is that you concede in your brief that under Edwards v. Arizona, there was an invocation of the right to counsel, but the questioning did not cease at that point. Detective Daly, for reasons known only to him, decided to keep asking the suspect about the stolen car. So, A, we've got a clear violation of Edwards at that point, and then secondly, we've got a factual finding by the district court that there wasn't a cessation to the interrogation, and it's hard for me to say that that factual finding is implausible for purposes of applying the Edwards rule. Well, the reality is that there was, your Honor is absolutely correct, there was no immediate cessation. However, the interview did cease four minutes later. During those four minutes, the detectives actually did not ask Mr. Dorsey any questions about the stolen car. They made a comment to Mr. Dorsey, that car that you were heading to this morning, that was a stolen car. Mr. Dorsey says, really? And after that, the questioning evolves into some discussion. Judge Lasnik looked at that and said, essentially, it was coercive questioning in the sense that they were trying to get a rise out of him, you know, to say, well, I didn't know it was stolen, or, yeah, I know, but, you know, I'm a really good car thief, and, you know, who knows what the suspect is going to say. Right, and we do take issue with detect, I'm sorry, with Chief Judge Lasnik's characterization of that as coercive questioning. If you watch the video, which your case is, where the detectives are acting in an intimidating manner, during those four minutes, most of the interaction is actually them laughing about losing money at poker. Right, but at the outset of it, you've got the one officer, and I forget which one it is, saying, you have your opportunity, and now it's gone. It's your direct communication that you're losing your opportunity to talk with us because you invoked your right to talk to a lawyer. Well, it is, and, in fact, he was telling him what was true. He was not going to have an opportunity, but the government's position is that that statement, even if coercive, was only mildly coercive given who Mr. Dorsey is, and given the amount of time that had passed, and given the nature of the setting in which they sat, and given the fact that Mr. Dorsey was offered food, clothing, the detectives maintained a calm demeanor. So, you know, is there one rule for John Doe and another rule for John Dillinger? Well, you do look at the totality of the circumstances here, Your Honor, and the case law says that it can include who the defendant is. But Judge Lasnik, I think, clearly recognized, Mr. Dorsey, with 50 prior adult convictions, has been around the block a couple of times, and he knows the system. He's really good at gaming the system, and the district court recognized that, but still, nonetheless, made a, maybe it's a mixed question of law and fact, but he made a determination that Detective Daley's statement to Dorsey was coercive. And actually, in doing so, I think, Your Honor, Chief Judge Lasnik conflated two concerns about coerciveness and reinitiation. The reality is that with Mr. Dorsey, silence probably would have had the exact same effect, and the reason why silence would have had the same effect is that here is a defendant who has talked himself over and over again out of a tough position. He probably would have had the same realization that he did after learning that the case was going to be federally prosecuted that, hey, maybe it's in my best interest at this point to speak to the law enforcement. Well, he's clearly fishing. He wants to know why the FBI agent is there, and they're not telling him. Right. You know, we've got games on both sides here, and Dorsey's good. I'll give him that. Do you want to address the other issue about whether he reinitiated? Absolutely. Once the interrogating agents left the room, every single interaction with law enforcement, between law enforcement and Mr. Dorsey, was initiated by Mr. Dorsey. Fifteen seconds after the law enforcement detectives leave the room, Mr. Dorsey starts engaging the FBI agent in what Your Honor aptly characterized as fishing. Then, about 30 minutes later, he reaches out to another detective to find out when they're returning. And specifically, he says, what are they going to do? He's been through the processing of times to know what the next step is. And the question of what they're going to do is very similar to the question that was raised in Bradshaw of what is going to happen to me now. Mr. Dorsey's concerned about what the next step is going to be. And that undoubtedly constitutes reinitiation. We don't have a situation here, Your Honors, where the detectives remain in the bar where they lied to Mr. Dorsey about what the evidence was. After they got up and left, they left him alone. And they didn't sit around waiting for him to make comments to them or say anything to him that might inspire reinitiation. He was left alone. And that silence, I think, is part of why Mr. Dorsey decided, hey, I think it's time for me to talk. Do you think that the silence and the waiting period might have had a coercive effect itself, icing the defendant, so to speak? I could understand how that would be a point of view for a defendant who was not as sophisticated as Mr. Dorsey. If Your Honors watched the video, Mr. Dorsey actually doesn't seem very concerned during that half hour. In fact, at one point, he pulls his T-shirt over his head and seems to be sleeping before Detective Seguro returns to the room. If this were a defendant who did not have English skills or a defendant who was young or a defendant who had no prior contacts in law enforcement, I would agree fully that an hour icing time, as Your Honor put it, would likely have a coercive effect, but not with this defendant. And that's why you look at who this defendant is to come to that conclusion that the hour-long break likely did not have a coercive effect on this defendant. Counsel, you've got about two minutes left if you want to say a rebuttal. I would, and thank you, Your Honors. Good morning. Mr. Canner. Actually, you might want to pull that close, because, yeah, they both amplify and record your arguments. All right. Well, let me first start out with this idea that Mr. Dorsey clearly invoked his right to counsel, and then Judge Lasnik's findings of fact that the interview never ended. And I think what's really important to recognize when we're looking at the record is that had Detective Bailey understood, and also Detective Seguro as well, understood that the interview really did end when they picked up their bags and they picked up their belongings, if they really understood that the interview ended at the time of the break, then why would Detective Seguro ask Mr. Dorsey and sort of prod him into asking him, I thought you wanted to talk to us? In other words, we have a situation where Detective Dorsey asks Kazner, can I use the bathroom, and Judge Lasnik found that that was a routine question, not reinitiation. Half hour goes by, and Detective Seguro enters the room, initiates contact with Mr. Dorsey by asking, what do you need, Mr. Dorsey? Mr. Dorsey responds by saying, oh, I already used the bathroom. If that's initiating contact, why does Detective Seguro say, what do you want, Dorsey? Well, you look at it in two parts. When Detective Seguro asks Mr. Dorsey, what do you need, and Mr. Dorsey then says, I already used the bathroom, if the interview had ended at the time of the break, Detective Seguro would have said... But then he goes on to say, I thought you guys were coming back. And that's what I think Ms. Otake is arguing is evidence of reinitiation. Oh, for Detective Kazner. That comment was made to Detective Kazner. And I would submit that that comment of when are they coming back is a routine question. When you look at that in light of what Detective Daley and Detective Seguro told Mr. Dorsey just before the end of the first interview... That we're going to take a break. We'll be gone a few minutes to make a phone call. And then Mr. Dorsey is sitting in this interview room, no change in environment, no change in interrogators, no change in anything. And all he wants to know is how long am I going to be sitting here in this holding cell? Well, that's not quite accurate. He made an offer to them that I've got information to trade, but then he also said, but I'd like to have my lawyer here. That was during the first part. Right. And that was... So he clearly has a motivation to continue talking to them. And that's fine. And that's perfectly fine because there's nothing, and Lasnik recognizes, Judge Lasnik recognized, it's perfectly appropriate for Mr. Dorsey to want to talk to them, but with a lawyer. And that's what the detectives had to respect. And then they get into this, yeah, no, that's fine. And this is in the record on page 10. We're going to respect your wishes, which means we're going to get you a lawyer, but your opportunity is here and now gone. The way I read it, the way Judge Lasnik, I believe, read it, is similar to the Collazo situation where, look, your opportunity to help yourself is right here. But if you want to get a lawyer, it's going to be gone. That's the only way you can interpret that. Mr. Kander, let me flag for you the one concern I've got about your client's position. And I think it may be a less weighty concern than the findings of fact made by the district court judge, so you may win on that. But what bothers me is we've got Miranda, which is a prophylactic rule to try to avoid compulsion in confessions. Then we've got Edwards, which seems like a prophylactic rule to try to avoid people evading Miranda. So it's sort of like a prophylactic rule on a prophylactic rule. So it's sort of like an inference on an inference. And it starts to look kind of weak as a violation because of that issue, contrasted with the testimony the guy gives when he's asked when he comes back, when they come back about, do you really want to get rid of your lawyer? You really want to talk to us? And why shouldn't we just be looking at whether his will was overborn and there was some compulsive atmosphere? Well, similar to the cases that I cited in Collazo, for example, when the detectives are specifically referring to the first part of the interview, right? What that seems to suggest, not only does it suggest that the interview never ended, but if it did end, then what it further suggests is that the detectives are prodding the defendant to speak without his lawyer. And we have in the record clear statements from Detective Seguro that says, I know it's a little redundant, we've already gone over this, but is it your wish to continue talking to us? But why isn't that perfectly consistent with what you and I talked about a couple of minutes ago, with Dorsey thinking that he'd made an offer to talk, the detectives then take a break to go get some legal advice as to what they ought to do, and a half an hour later, or maybe closer to an hour after he uses the restroom, Dorsey essentially says to the other detective, where are those guys? I thought they were coming right back. To me, that sounds like an invitation to continue talking. And at that point, Detective Seguro prudently readmonishes and gets an express waiver of the right to counsel. Why shouldn't we find that as a matter of law to meet the exception under Edwards? Because if we look at the sequence of the dialogue, Mr. Dorsey is simply responding to police-initiated communications. No, he's the one who asked the, was it Kasner, Detective Kasner, to, where are those guys? Which I interpret to mean, I thought they were coming back. I want to talk. He said, okay, to be specific, Dorsey asks Kasner, they tell you they're coming back. And the way I interpret that, and I believe the way Judge Lasnik interpreted that statement, is inquiring about, are they coming back? Because they said they were going to come back. Right. If the defendant doesn't want to talk to him without the presence of a lawyer, why is he asking for the detectives to come back? Or he could be asking, how long am I going to be sitting here? Well, that's not what he says. Well, he says, they tell you they're coming back, did you want to see Seguro? Dorsey never tells Detective Kasner, I want them to come back. Which is why the first thing Seguro says to Dorsey is, what do you want, Dorsey? Right, and then what does Dorsey say in response? I've already used the bathroom. I've already used the bathroom. And if the interview clearly ended, this is my point, if the interview clearly ended at that point, at least in Seguro's mind, why didn't he just leave? Why did he have to prod Mr. Dorsey with, I thought you wanted to talk to us, is it your intention to continue talking to us? And he says, what? And that's when he caves in. Well, he caves in or agrees to continue the interview, that's the question we're asking. I think Judge Benitez has a question. Yeah, I was wondering if maybe you could tell me what you think Mr. Dorsey intended when he made the following statement. I've been told you all that, you all left, I didn't tell you guys to leave, you all left. Right, and that, the way I interpret that, Your Honor, it's again a response by Mr. Dorsey to police initiated contact. You have to look at what was said right before that point. But doesn't that statement lead one to believe that he had a change of heart, that he decided that he wanted to talk to the officers, that he thought when they left the room that they were going to do something, that they were going to come back and then they were going to go ahead and continue to talk? Isn't that a fair implication of that statement? The way I see it, Your Honor, it's a response to the first question by Mr. Seguro, initiating, I thought you wanted to talk to us or something. In other words, Seguro is the one initiating the conversation, prodding Mr. Dorsey to give a response. And Mr. Dorsey simply responds to that further police initiated questioning, which is, I've been told you all that. But when Detective Seguro says, I thought you wanted to talk to us or something, the first word out of Dorsey's mouth is, yeah. It's a response. Well, yeah, which could mean, yes, I want to talk to you. And the question I would submit to Your Honor, the question before the court is, is that inappropriate police initiated conduct that violates Edwards? Well, assuming Seguro came back to the interview room because he thought that Dorsey needed to use the restroom and Dorsey told him, I don't need to go to the bathroom, that's already been taken care of. And then Seguro says, I thought you wanted to talk to us or something, which I interpret to mean, I thought that's why you wanted me to come back. And then Dorsey says, yeah. And then he says, I'm wondering when you all was coming back. All right. I understand. Let me ask you procedurally, if we agree with half of your argument but not this half, are we obligated to remand to the district court for a further factual determination? If anything, Judge Lasnik did not make any factual findings on Edwards because he found a Miranda violation, which I submit is correct. But if the court disagrees with me on the Miranda violation, the next question is, was there an Edwards violation, and we don't have a record of that. I believe I'm out of time. Thank you. Thank you, Mr. Garner. Thank you. Okay. Thank you. To respond to Judge Tallman's last question, the government's position is that the facts are fully flushed out here and that, with the record, that your honors could enter findings without the need to remand. You mean we would have to enter a finding that the interrogation ended when I kept questioning? Yes. And I'd actually like to address that question. I incorrectly earlier characterized it as a question of clear error, and I do agree with Judge Tallman that it's more a question of mixed law and fact, and the appropriate standard of review is de novo. Well, it's clear error as to the facts and de novo as to the law, but how you cook that soup is something we struggle with in every one of these mixed law and fact. I'm glad I'm not the only one. I will say, Your Honor, that what concerns the government so much about Judge Lasnik's holding is that, without immediate cessation, if you carry Judge Lasnik's holding to its logical conclusion, without an immediate cessation, an interview can never really end. And what we have here is we have a couple of detectives who realized very quickly that they probably made a mistake and they left the room. And if we follow Judge Lasnik's logic, that kind of, I think, correct reevaluation by law enforcement has absolutely no legal ramifications. Well, the problem in watching the interview is it looked to me like the State Patrol detective daily thought that there had been an invocation because he starts to pick up his notebook and get up to leave. But then Seguro seems to be saying, I'm not sure, Dorsey, what are you at? Do you want a lawyer or not? And so there's some confusion among the interview team as to which way Dorsey's going at this point. And that's correct. Your Honor is absolutely correct. And then apparently Seguro is prevailed upon by daily and they decide, well, maybe we better go get some legal advice before we do anything more. Well, that is a completely correct characterization of what happened. But Judge Lasnik's holding basically seems to ignore the fact that this interaction with Detective, with Mr. Dorsey was only for four minutes. Counsel, you're over your time now. So unless one of the judges has further questions or if you haven't fully answered them,  Thank you, Your Honor. And the government respectfully asks Your Honors to conclude that Mr. Dorsey was not railroaded here. The only person who convinced him to change his mind was himself. And we ask that Your Honors reverse the district court's ruling. Thank you. Thank you. Okay, we thank both counsel, nicely argued. And United States v. Dorsey shall be submitted.
judges: Benitez, Gould, Tallman